IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RICHARD MYER, <br><br> Plaintiff, <br><br> v. <br><br> JOHNS CREEK PRESBYTERIAN CHURCH, <br><br> Defendant. | CIVIL ACTION NO. <br> _____ <br><br><br> JURY DEMANDED |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Richard Myer ("Plaintiff" or "Myer") files this action against Defendant, Johns Creek Presbyterian Church ("Defendant" or the "Church") and states as follows:

### CAUSES OF ACTION

1. This is an action for the recovery of unpaid overtime wages as well as an action for retaliation brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.§ 201, *et. seq.* ("FLSA").

### PARTIES

2. Plaintiff Richard Myer is an individual residing in Georgia.

3. Defendant Johns Creek Presbyterian Church is an employer doing business in Georgia. Defendant can be served at 10950 Bell Road, Johns Creek,

1

Georgia 30097.

## JURISDICTION AND VENUE

4. Subject matter jurisdiction is proper in this court under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because this action involves a federal question under the FLSA.

5. Personal jurisdiction and venue are proper in this Court because at all times material, Defendant resided in, and all significant events giving rise to Plaintiff's claims occurred within, Johns Creek, Georgia.

## GENERAL ALLEGATIONS

6. At all times relevant, Defendant operated as religious organization at 10950 Bell Road, Johns Creek, Georgia 30097.

7. At all times material hereto, Defendant was an "employer" within the meaning of 29 U.S.C. § 203(d).

8. At all times relevant, Defendant employed Plaintiff who was engaged in interstate commerce.

9. In or around April 2016, Plaintiff was hired by Defendant as Facilities Manager for all of the Church's campus facilities. Since that time until his retaliatory termination, Plaintiff has been responsible for overseeing, including personally conducting, the maintenance, upkeep, and repairs to the Church's campus facilities. Additionally, Plaintiff has also been responsible for

cleaning/janitorial services of Defendant's facilities.

10. During this time, Plaintiff's actions were at all times directed and controlled by Defendant's staff. Defendant told Plaintiff when he needed to report to work at the church. Defendant told Plaintiff what maintenance and repair projects to focus on. At all times during his employment, Plaintiff's work has been directed by the Church's leadership.

11. Upon information and belief, Defendant misclassified Plaintiff's employment and erroneously considered and paid him as an independent contractor. However, throughout his employment with Defendant, Plaintiff was an employee of Defendant, not an independent contractor.

12. Defendant asserted behavioral control over Plaintiff where all of Plaintiff's work was directed by Defendant. Plaintiff was told by Defendant and Defendant's staff what he should and should not do, and his hours were set by Defendant. Plaintiff was required to use Defendant's tools and supplies, was required to attend regular meetings with the Church leadership, and was required to be present and on-call for maintenance and repair emergencies.

13. Defendant asserted financial control over Plaintiff's employment, too. His wages were controlled by Defendant; he was asked to use Defendant's timesheets for tracking of his time worked; he could not make a personal profit or loss; and any changes in his pay rates were required to be approved by

Defendant as a "raise."

14. Plaintiff's employment with Defendant lasted for more than nine years and was not based upon the completion of a specific project or defined period. There is no agreement or contract between Plaintiff and Defendant. Defendant also permitted Plaintiff to sign contracts on behalf of Defendant. Defendant's behavior demonstrates that it has considered Mr. Myer an employee throughout his tenure.

15. In October 2021, Plaintiff suffered a workplace injury (a concussion), which was covered under the Church's worker's compensation coverage and Defendant granted Plaintiff three-weeks paid leave to recover from his concussion.

16. Further, Plaintiff was included in church-wide and departmental communications; his name appeared in the Church's facilities and leadership directory; and he has been provided with a church email address.

17. During a meeting in or around February 2023, Defendant acknowledged to Plaintiff that he was treated as any other member of the staff. At this same meeting, Defendant insisted that Plaintiff continue to report time accurately and timely, that he adhere to specific assigned duties, and that he submit projects to add to a master list of projects maintained by Defendant. As with any other employee, at the conclusion of this same meeting, Defendant

provided Plaintiff with a performance improvement plan insisting that he demonstrate "immediate, substantial and sustained improvements" within the next thirty (30) days.

18. Plaintiff continued to work in the capacity of full-time Facilities Manager until his retaliatory termination on or about April 4, 2023. Defendant retaliated against Plaintiff when it terminated Plaintiff approximately 3 days following receipt of undersigned counsel's April 1, 2023 letter to Defendant advising Defendant that it had misclassified Plaintiff's employment status.

19. While employed by Defendant, Plaintiff worked at least forty (40) hours a week. Additionally, Plaintiff was always on-call in the event of a maintenance or facilities emergency with any of the Church's campus facilities, which frequently resulted in him working overtime in many work weeks.

20. Defendant did not pay Plaintiff for all of the hours worked and did not ever pay Plaintiff for the overtime hours that he worked in violation of the FLSA and Georgia state law.

21. Defendant agreed that Plaintiff would be compensated for the services provided to Defendant at a rate of $25.75 per hour, which should have resulted in an overtime rate of $38.63 per hour.

22. Upon information and belief, Defendant's willful misclassification of Plaintiff's employment status interfered with his ability to participate in the

Defendant's employee benefit plans, potentially in violation of other state and/or federal laws. As a result of Defendant's misclassification of Plaintiff's employment status, Defendant has subjected Plaintiff to significant damages.

23. Plaintiff estimates that while serving as Facilities Manager for the Defendant, he worked multiple dozens, if not hundreds of overtime hours during April 1, 2016 through his termination on April 4, 2023, for which he was not paid at the legally required overtime rate.

24. Plaintiff has had to retain the undersigned counsel to bring the instant action and will incur attorney's fees for said representation.

## COUNT I
## FAILURE TO PAY OVERTIME WAGES
## IN VIOLATION OF THE FLSA, 29 U.S.C. §§ 206 & 207

25. Plaintiff re-alleges and adopts, as if fully set forth in Count I, the allegations in paragraphs l through 24.

26. During the relevant time-period, Plaintiff was a non-exempt employee under the FLSA and was therefore entitled to overtime pay at time and one-half his regular rate of pay for all hours worked in excess of forty (40) hours in a workweek.

27. During the relevant time-period, Defendant routinely required Plaintiff to work in excess of forty (40) hours in a workweek.

28. In violation of the FLSA, Defendant willfully failed to pay Plaintiff

for the hours he worked over forty (40) in a work week at time and one-half his regular rate of pay for each overtime hour worked.

29.     As a direct result of Defendant's violation of the FLSA, Plaintiff has suffered damages in the way of unpaid overtime compensation.

30.     Defendant did not make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff.

31.     Plaintiff is entitled to recover from Defendant the unpaid overtime compensation, an additional equal amount as liquidated damages, prejudgment interest, and reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II
## RETALIATORY DISCHARGE
## IN VIOLATION OF THE FLSA, 29 U.S.C. § 215(a)(3)

32.     Plaintiff re-alleges and adopts, as if fully in Count II, the allegations in paragraphs 1 through 31 above.

33.     On April 1, 2023, undersigned counsel sent a letter to Defendant advising of Defendant's improper misclassification of Plaintiff as an independent contractor.

34.     On April 4, 2023 only 3 days following Defendant's receipt of undersigned counsel's March 31, 2023 letter, Defendant terminated Plaintiff's employment and represented to him that the termination was due to the March 31, 2023 letter.

35. Defendant's termination was in retaliation for his complaint through undersigned counsel's letter about his employment status misclassification.

36. As a direct result of Defendant's violation of the FLSA, Plaintiff has suffered damages and is entitled to recover from Defendant compensatory damages including back pay and front pay, an additional equal amount as liquidated damages, prejudgment interest, and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff Richard Myer demands judgment against Defendant for unpaid overtime compensation, damages for his retaliatory discharge, statutory liquidated damages, prejudgment interest together with the costs of suit and reasonable attorney's fees (pursuant to Section 216(b) of the FLSA), and such other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment to the United States, a demand a trial by jury as to all issues triable as of right.

Respectfully submitted this 13th day of November, 2023.

/s/ Nancy B. Pridgen
Nancy B. Pridgen, Esq.
Georgia Bar No. 587949

Pridgen Bassett Law, LLC
138 Bulloch Ave.
Roswell, Georgia 30075
nancy@pridgenbassett.com

Direct:  404.551.5884
Fax:  678.812.3654